IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BOBBY W. SMITH, )
 )
    Plaintiff, )
 )
v. ) Case No. 3:05cv0390
 )
JO ANNE BARNHART, ) Judge Thomas A. Wiseman, Jr.
Commissioner of Social Security, )
 )
    Defendant. )

## MEMORANDUM OPINION

The case was referred to United States Magistrate Judge E. Clifton Knowles pursuant to 28 U.S.C. § 636(b)(1)(B). Thereafter, Plaintiff Bobby W. Smith filed a motion for judgment on the administrative record seeking entry of judgment in his favor on the grounds that he has been disabled at all times since October 30, 2001. (Doc. No. 13.) The Commissioner of Social Security ("Commissioner" or "Defendant") filed a response opposing Plaintiff's motion. (Doc. No. 18.) Magistrate Judge Knowles filed a Report and Recommendation ("Report") (Doc. No. 19) recommending that the Plaintiff's motion be denied and that the decision of the Commissioner be affirmed. Plaintiff has filed timely objections to the Magistrate's Report (Doc. No. 20.)

The Court has reviewed *de novo* the entire record and the pleadings, with particular attention to those portions of the record that are relevant to Plaintiff's objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court finds Plaintiff's objections to be without merit and will therefore overrule those objections. The Court finds that the Magistrate Judge reached the correct conclusions in the Report and therefore accepts and adopts the Magistrate Judge's Report and Recommendation. For the reasons set forth therein, the Court will deny Plaintiff's Motion for Judgment and affirm the Commissioner's judgment.

I.    **INTRODUCTION**

    A.    **Procedural Background**

Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Commissioner, finding that Plaintiff was not disabled and denying his petition for

supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act (the "Act").

Plaintiff filed his current applications for SSI and DIB on June 19, 2002, alleging that he had been disabled since October 30, 2001, due to "pinched nerve, right arm numb, 3 bulging discs in neck, arthritis." (Doc. No. 11, Administrative Record ("AR") 61–63, 75, 210–12.) Plaintiff's applications were denied initially and upon reconsideration. (AR 37–38, 39–40, 213–14, 219–20.) Plaintiff requested and received a hearing. (AR 51–52, 53–58, 224–47.) The hearing was conducted on April 7, 2004 before Administrative Law Judge ("ALJ") D. Lyndell Picket. (AR 224.) The ALJ issued a written decision denying Plaintiff's applications on August 27, 2004. (AR 14–24.) The Appeals Council issued a letter dated December 16, 2004 declining to review the case (AR 9–11), thereby rendering the ALJ's decision the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court referred this matter to the Magistrate Judge, who has recommended that the Commissioner's denial of benefits be affirmed. Plaintiff has filed timely objections to several of the Magistrate Judge's findings, as discussed below.

**B.    Factual Background**

The Magistrate Judge's account of the factual background is thorough and accurate. The Court hereby incorporates by reference said factual background and will not repeat it here, other than to summarize briefly Plaintiff's personal history and medical complaints.

Plaintiff was born October 14, 1955 and was age 48 at the time of the ALJ's decision. He has a tenth-grade education, is able to read and write, and has past relevant work as a machine operator, pressman and grocery stocker, all at the heavy to medium level of exertion. Plaintiff alleges that he became disabled on or about October 30, 2001 and that he has not engaged in substantial gainful activity since that date.

Plaintiff first began complaining to his treating physician, Dr. W. Cooper Beazley, about neck and left shoulder pain in September 2000. At that point his sensory and motor examinations were "normal" (AR 141), although an MRI conducted in October 2000 revealed "left-sided herniations of C4–C5 and C5–C6 with left-sided neural impingement" and "multi-level degenerative disc disease." (AR 136.) He was treated conservatively in the fall of 2000 with epidural injections and pain medication (Co-Gesic). At a follow-up

2

Case 3:05-cv-00390    Document 21    Filed 09/28/06    Page 2 of 11 PageID #: 81

examination in June 2001, he was doing "pretty well," the tingling and numbness in his left arm had resolved and his neck pain had "markedly decreased." (AR 139.) Dr. Beazley concluded Plaintiff did not have any work restrictions at that time.

Nearly a year later, in May 2002, Plaintiff went to the Gateway Medical Center ER complaining of exacerbation of neck and back pain, allegedly resulting from an attempt to return to work. (AR 121–22.) In August 2002, he was examined by Donita Keown, M.D., on behalf of the Tennessee Disability Determination Services. (AR 129–31.) Dr. Keown noted that while she was conducting an assessment of the motor-strength of Plaintiff's right upper extremity, Plaintiff applied "very poor effort." (AR 131.) Dr. Keown stated: "It is clear that he is attempting to mislead this examiner." (*Id.*) She assessed Plaintiff as able to sit for six hours and to stand or walk for six hours in an eight-hour work day, to lift 15 to 20 pounds routinely, and 35 to 40 pounds "episodically." (*Id.*) Plaintiff underwent another consultative examination in September 2002 by Dr. George W. Bounds for the Tennessee Department of Human Services, in which the examiner again believed Plaintiff's descriptions of pain were not fully credible "given his poor effort on exam and lack of [physical] findings." (AR 132.)

Plaintiff began treatment for neck pain again with Dr. Beazley and his nurse practitioner, Nurse Stephens, in September 2002, and continued conservative treatment of his symptoms through Dr. Beazley's office with relative regularity through the date of the hearing. During this time frame, the pain appeared to periodically flare up worse on the right side than the left, but sometimes worse on the left. Dr. Beazley completed a Medical Assessment of Abiltity to Do Work-Related Activities in October 2003, in which he indicated Plaintiff was restricted to a limited range of sedentary work, at less than full time.

## II. THE ALJ'S DECISION

After reviewing all the evidence in the record, medical and otherwise, regarding Plaintiff's vocational limitations, and evaluating Plaintiff's symptoms, including pain, in accordance with the provisions of 20 C.F.R. §§ 404.1529 and 416.929, the ALJ made the following specific findings:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits, as set forth in § 216(i) of the Social Security Act, and is insured for benefits through March 31, 2007.

2. The claimant has not engaged in substantial gainful activity since October 30, 2001, the alleged onset date.

3

3. The claimant's degenerative disc disease and osteoarthritis of the cervical spine, with resultant chronic neck and arm pain are impairments considered "severe," based on the criteria in the Regulations at 20 CFR §§ 404.1520(b) and 416.920(b).

4. The claimant's severe impairments do not meet or medically equal the criteria of any listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's testimony was not fully credible and did not support a finding of disability.

6. All the medical opinions regarding the severity of the claimant's impairments have been carefully considered (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity to lift and/or carry up to ten pounds on a frequent basis and up to 20 pounds on an occasional basis; to stand and/or walk for a total of up to six hours per eight-hour work day; and to sit (with normal breaks) for a total of up to six hours per eight-hour work day; in addition, he is to avoid more than occasional balancing, climbing, crawling, crouching, kneeling, stooping or overhead work; he is to avoid all climbing of ropes, ladders or scaffolds; and he is to avoid more than frequent reaching or handling with the dominant right hand.

8. The claimant is unable to perform any of his past relevant work. . . .

9. The claimant is "a younger individual" . . . .

10. The claimant has a "limited" education. . . .

11. The claimant has no transferable skills. . . .

12. Using Medical-Vocational Rule 202.18 as a framework for decisionmaking, there are a significant number of jobs in the national economy that the claimant could perform.

13. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision. . . .

(AR 22–23.)

### III. THE MAGISTRATE'S DECISION AND THE PLAINTIFF'S OBJECTIONS THERETO

The Magistrate Judge filed his Report recommending that the Plaintiff's Motion for Judgment be denied and the Commissioner's decision affirmed. The Plaintiff has filed objections to the Magistrate's Report, in which he makes the following specific objections: (1) that the Magistrate incorrectly found that the ALJ gave appropriate weight to the treating physician's opinions; (2) that the Magistrate erred in determining that the ALJ's finding that Plaintiff was not fully credible was sufficiently supported by the record; and (3) that the Magistrate incorrectly found that the ALJ did not err in failing to include a finding of left arm/hand limitations in the residual functional capacity determination. (Doc. No. 20, at 1–2.)

4

## IV. DISCUSSION

### A. Standard Of Review

The Court's standard of review for a Magistrate Judge's Report and Recommendation depends upon whether a party files objections. Here, where the Plaintiff has objected to portions of the Report and Recommendation, the Court reviews those portions *de novo*. *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004).

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). This Court, therefore, is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). If substantial evidence supports the ALJ's conclusion, this Court cannot reverse the ALJ's decision even if substantial evidence exists in the record that would have supported an opposite conclusion. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### C. Plaintiff's Objections to the Magistrate Judge's Report & Recommendation

#### *(1) Whether the ALJ Gave Appropriate Weight to the Treating Physician's Opinions*

Dr. Beazley signed a medical assessment form on October 23, 2003, in which he indicated that the Plaintiff had cervical arthritis and left cervical radiculopathy, could occasionally lift ten pounds, frequently lift less than ten pounds, stand and/or walk less than two hours in an eight-hour work-day and sit for less than four hours in an eight-hour work-day. (AR 156–57.) As Plaintiff points out, if the ALJ had accepted that opinion, it would mean that Plaintiff was not capable of any full-time work and would, consequently, dictate a finding of disability. Plaintiff argues that the ALJ erred in failing to accept his treating physician's opinion.

The ALJ stated that Dr. Beazley's opinion was not entitled to great weight, finding as follows:

> The undersigned finds that the assessment of Dr. Beazley in October 2003, in which he described a very limited range of sedentary work for which the claimant was allegedly suited,

>was inconsistent with the weight of the medical evidence in the records, including Dr. Beazley's own progress notes. The undersigned observes that, on multiple occasions, the claimant returned to work, apparently with the approval of Dr. Beazley. Furthermore, despite the degenerative changes noted in the claimant's cervical spine and his complaints of episodic numbness in the hands, there was no mention in the progress notes of significant physical limitations. The undersigned further observes that, according to the consultative examination by Dr. Keown, the claimant had a full range of motion and that he was deceptive during the strength testing. For all these reasons, the undersigned finds that the opinion of Dr. Beazley is not entitled to great weight, let alone controlling weight.

(AR 20.)

Plaintiff argues that the ALJ's rejection of Dr. Beasley's opinion is unwarranted because (1) Dr. Beasley had treated Plaintiff for a significant period of time, and either he or his Nurse Practitioner saw the Plaintiff a total of fourteen times after the alleged onset date of October 30, 2001; (2) Plaintiff has had three MRIs that support his complaints of pain and numbness, especially on his left side (AR 133, 135–136, 209); (3) Dr. Beazley is a board certified orthopedic specialist whose opinion in the area of his expertise is entitled to substantial deference; and (4) Dr. Beazley's findings were consistent with the MRI, but Dr. Keown's opinion, which is inconsistent with Dr. Beazley's, is not entitled to great weight because she saw Plaintiff only once and made no mention of seeing his MRI results.

Under the law, if the ALJ rejects the opinion of a treating source, he is required to articulate some basis for such rejection. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). There is no dispute that Dr. Beazley was a "treating source" under the Regulations, and that he treated Plaintiff for a significant period of time. *See* 20 C.F.R. § 404.1502 (defining "treating source" as a practitioner who has an "ongoing treatment relationship" with the claimant). As the Magistrate Judge noted, that fact would justify the ALJ's giving greater weight to Dr. Beazley's opinion than to other opinions in the record. As the Regulations make clear, however, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 416.927(d)(2) and 404.1527(d)(2).

Here, Plaintiff is essentially arguing that there is no substantial evidence in the record that contradicts Dr. Beazley's assessment of his work-related abilities. To the contrary, not even Dr. Beazley's own progress notes indicate that Plaintiff's condition rendered him unable to perform any work. For instance, Plaintiff first began experiencing symptoms related to neck pain in the fall of 2000, at which time he had an MRI that

6

confirmed he had arthritis, degenerative disc disease, and bulging discs at C4–5 and C5–6. Despite the MRI findings, Plaintiff does not allege he was disabled by pain at that time. In addition, by June of 2001, according to Dr. Beazley's notes, Plaintiff was doing "really . . . pretty well." The pain in his neck and the "tingling and numbness" in his arms had largely resolved. The doctor opined then that he should be able to work without any problem. Despite an alleged disability onset date of October 2001, Plaintiff did not return to Dr. Beazley after that until September 2002, over a year after the June 2001 examination.

In fact, on September 18, 2002, Dr. Beazley noted he had not seen Plaintiff in "quite a while." (AR 138.) The record indicates that Plaintiff had been doing "reasonably well" but that he had recently begun having more pain. At that time, right arm pain and decreased sensation in his right hand were his chief complaints. (AR 138.) His neck was noted to be "a little bit sore and tender," but his motor abilities and reflexes were normal. He had no obvious atrophy in his upper extremities, indicating he was able to use his arms. (*Id.*)

In October 2002, the pain had migrated back to the left side, where it started, but Plaintiff still had full range of motion in his shoulders, with some numbness in his left forearm and hand. In November 2002, Dr. Beazley noted that Plaintiff had "documented degenerative disc disease" but "no evidence of disc herniation at this point, just arthritic change from bony impingement." (AR 137.) He was in "significant discomfort with his neck and pain going down the left shoulder and trapezius region," but his neurological, sensation and motor abilities were "grossly intact," and "[m]otion in the shoulder, elbows and wrists are [sic] full and not particularly painful." (*Id.*)

Beginning in 2003, Plaintiff was treated primarily by Dr. Beazley's Nurse Practitioner, Kitty Stephens. In January 2003, Nurse Stephens assessed Plaintiff as having "cervical radiculopathy that persists bilaterally, right worse than left." (AR 203.) Plaintiff's range of motion in his neck was somewhat limited, but full elsewhere. Both the Plaintiff and Nurse Stephens appeared frustrated because Plaintiff's insurance did not cover the epidural injections or physical therapy recommended by Dr. Beazley. (*Id.*) Plaintiff had similar complaints in February 2003, but Dr. Beazley noted his physical examination was "[p]ertinent in that his physical exam is amazingly normal. I do not see any atrophy in the upper extremities. No gross neurologic deficits." (AR 202.) Again in March, Nurse Stephens noted that Plaintiff had presented at the ER the day

7

before complaining of increased pain in his neck, but, while he appeared to be "in mild distress," his physical exam was "virtually normal in regard to both his sensory and his motor exam, as well as any soreness to palpation." (AR 201.) Nurse Stephens also noted: "I relayed to him once again that his MRI does show that at the C4 and C5 levels he has a left-sided disk herniation, but nothing appears to be to the right that correlates with his symptoms." (AR 201.) The ER report from March 2003 indicates Plaintiff was complaining of significant pain in his right upper back but "denie[d] any loss of function in his right upper extremity" despite some chronic numbness. He complained of no pain on the left side of his neck or left arm at that time. (AR 173.) He was somewhat improved in April 2003 (AR 200), but reported back with recurring pain in June 2003 ("not as severe as it has been in the past") (AR 199).

In July 2003, he was complaining of pain radiating down his right arm, "becoming more persistent and more intense." (AR 198.) Despite a "trigger point" at the base of his neck and in the levator scapular region, he still had full range of motion in his neck and upper extremities and his sensory and motor exam was "grossly intact." (AR 198.) In October, he presented with "recurrent problems," but now he complained of left shoulder pain instead of right. (AR 196.) In December he was noted to be in "mild distress," with pain on both the right and left sides. (AR 195.) By January 2004, he was "a little bit better." (AR 194.) In March 2004, he was again complaining of "persistent and increasing pain" in his neck and down both arms, worse on the right. A third MRI was ordered. (AR 193.) Unfortunately, no further progress notes from Dr. Beazley or Nurse Stephens are in the record.

Dr. Beazley's "Medical Assessment of Ability to Do Work-Related Activities, Physical," dated October 2003, described Plaintiff's impairment as "Cervical Arthritis with L [left] Cervical Radiculopathy." (AR 156.) That diagnosis was used to support Dr. Beazley's "findings" regarding Plaintiff's purported physical abilities, without further elaboration. Dr. Beazley's findings are contradicted by significant evidence in the record, including Plaintiff's insistence at the hearing that most of his symptoms were on the right side rather than the left. (AR 236.) Moreover, the record, as demonstrated above, repeatedly indicates that Plaintiff did not have any significant decrease in the range of motion or use of his arms and shoulders. Both independent examiners who assessed his abilities found he lacked credibility and put forth poor effort.

In addition, although Plaintiff claims the MRIs support Dr. Beazley's assessment, it is significant that

8

the MRI conducted in September 2002 revealed no substantial changes from that conducted in October 2000, a year before Plaintiff's alleged onset date. Both of these studies showed left-sided C4–5 and C5–6 disc protrusions with left-sided neural impingement and foraminal stenosis, and degenerative disc disease at C6–7 and C7–T1. (AR 133.) For some reason, the physician who conducted the MRI in April 2004 did not have the prior studies for review (*see* AR 209), but it is apparent that the third MRI again revealed left-sided C4–5 and C5–6 bulging discs. (*Id.*) In other words, while the MRIs supported the fact that Plaintiff had two bulging disks, they do not necessarily substantiate the degree of pain allegedly suffered by the Plaintiff, particularly given that he sometimes hurt on the left side and sometimes hurt on the right side, and the MRI, according to Nurse Stephens, did not support the degree of pain on the right side Plaintiff claimed to experience. Further, his pain often subsided for substantial periods of time even after he had been diagnosed with degenerative disc disease and arthritis.

Consequently, the ALJ did not err in finding that Dr. Beazley's opinion was contradicted by other substantial evidence in the record.

### *(2) The ALJ's Determination that the Plaintiff Was Not Fully Credible Is Supported by the Record.*

Plaintiff maintains that the ALJ's determination concerning his ability to work is faulty because it was based partially on the ALJ's improper assessment of his credibility. In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant. *Walters*, 127 F.3d at 531; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing a witness's demeanor and assessing his credibility. *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir.1987). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir.1978). If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so, *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (citations omitted), and the reasons must be supported by the record, *see King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Generally speaking, an ALJ's decision to discount a claimant's credibility will be considered appropriate if the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and the other evidence.

9

*See Walters*, 127 F.3d at 531.

The ALJ in this case did not completely discount Plaintiff's subjective complaints of pain or his reported limitations. Instead, he found that the Plaintiff's testimony "particularly as it related to alleged physical limitations, was inconsistent with the weight of the medical evidence [and] was not wholly credible." (AR 20.) Specifically, the ALJ found that the medical evidence did not support Plaintiff's allegations that he was unable to grip or use his hands. The ALJ noted that his finding was supported by the fact that the medical record did not indicate a significant decrease in strength, and further noted that Dr. Keown, who performed a consultative examination of Plaintiff, believed Plaintiff had demonstrated poor effort in strength testing and "deliberately tr[ied] to deceive her." (*Id.*)

The ALJ found Plaintiff to lack credibility in only one specific area, and his finding is supported by specific reasons, which in turn are supported by the record. The ALJ did not err in discounting Plaintiff's credibility in this limited manner.

### *(3) The ALJ Did Not Err in Not Including a Finding of Left Arm/Hand Limitations in the Residual Functional Capacity Determination*

Finally, Plaintiff argues that, "even though the MRI's support a finding of limitations in the left arm/hand, the residual functional capacity mentions only the dominant right hand (Tr. 23). The omission of the left hand/arm limitations calls into question the residual functional capacity finding." (Doc. No. 14, at 18.) This Court agrees with the Magistrate Judge's finding that the record as a whole is replete with doctors' evaluations, medical assessments and test results that were considered by the ALJ and that together constitute substantial evidence to support the ALJ's determination that Plaintiff retained the Residual Functional Capacity "to lift and/or carry up to ten pounds on a frequent basis and up to 20 pounds on an occasional basis; to stand and/or walk for a total of up to six hours per eight-hour work day; and to sit (with normal breaks) for a total of up to six hours per eight-hour work day," with additional postural limitations, including no more than occasional balancing, climbing, crawling, crouching, kneeling, stooping or overhead work, and no climbing of ropes, ladders or scaffolds, and no more than frequent reaching or handling with the dominant right hand. (AR 23.) The fact that the ALJ did not specifically mention the non-dominant left hand is supported by the fact that Plaintiff himself disclaimed having any significant limitations in his left upper extremity. (*See* AR 236.) Moreover, it is unlikely that a job that limits a person to "no more than frequent

10

reaching or handling" with the dominant hand would require more than frequent reaching or handling with the non-dominant hand.

The ALJ's findings regarding the Plaintiff's Residual Functional Capacity is supported by substantial evidence in the record, and the ALJ did not err in failing to find Plaintiff to be have a specific limitation in his left upper extremity.

## V. CONCLUSION

As indicated above, the Court finds that Plaintiff's objections are without merit and must be overruled. The Court accepts and adopts the Magistrate Judge's Report and Recommendation. For the reasons set forth therein, the Court will grant the Defendant's Motion for Judgment and deny Plaintiff's Motion. The Commissioner's judgment will be affirmed. An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge